


PDK/FRAUD: USAO 2025R00318

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PX-25-173 |
| | * | |
| PM CONSULTING GROUP LLC | * | (Conspiracy to Commit Bribery of a |
| D/B/A/ VISTANT, | * | Public Official, 18 U.S.C. § 371; |
| | * | Securities Fraud, 15 U.S.C. §§ 78j(b), |
| Defendant | * | 78ff, 17 C.F.R. § 240.10b-5; |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| | * | 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| | * | |

*******

## INFORMATION

The United States of America charges that:

### INTRODUCTION

At all times relevant to this Information, with all dates being approximate and inclusive:

1. The defendant, **PM CONSULTING GROUP LLC D/B/A/ VISTANT** ("**VISTANT**"), was a federal contractor headquartered in Towson, Maryland that provided services involving technology solutions and program management to government agencies, including the United States Agency for International Development ("USAID").

2. Walter Barnes ("Barnes"), a Maryland resident, was the founder, owner, and president of **VISTANT**. In executing the bribery scheme and securities fraud schemes described below, Barnes, at all times, acted as an agent within the scope of his employment with **VISTANT** and with intent to benefit **VISTANT**.

3. Roderick Watson ("Watson"), a Maryland resident, was a contracting officer at USAID from in or around 2009 through in or around 2023. As such, Watson was a public official under 18 U.S.C. § 201(a)(1).

4. Darryl Britt, a Florida resident, was the president of Apprio, Inc. ("Apprio"), which maintained its headquarters in Washington, D.C. Apprio provided services involving technology solutions and program management to government agencies, including USAID.

5. Paul Young ("Young"), a Maryland resident, was affiliated with Company 1, which was headquartered in Fulton, Maryland, and contracted with United States government agencies to provide Information Technology Services.

6. Company 2 was a private equity company based in Maryland.

## COUNT ONE
### (Conspiracy to Commit Bribery of a Public Official)

7. Paragraphs 1 through 6 of this Information are alleged and incorporated by reference as if set out in full.

8. Between in and around 2013 and in and around 2023, in the District of Maryland and elsewhere, the defendant,

**PM CONSULTING GROUP LLC D/B/A/ VISTANT,**

did knowingly combine, conspire, confederate, and agree with Barnes, Watson, Britt, Young, and others, known and unknown, to commit an offense against the United States, namely, bribery of a public official, that is, to corruptly give a thing of value to a public official with intent to influence an official act, in violation of 18 U.S.C. § 201(b)(1)(A).

### Object of the Conspiracy

9. The object of the conspiracy was for **VISTANT**, Barnes, and their co-conspirators to: (a) unjustly enrich and distribute proceeds amongst themselves by corruptly agreeing to provide money and other things of value to Watson, a public official, in return for Watson being influenced to help secure USAID contracts; and (b) to conceal the conspiracy and the co-conspirators' overt acts in furtherance of the conspiracy.

2

## Manner and Means

10. It was part of the conspiracy that **VISTANT**, Barnes, and their co-conspirators bribed Watson repeatedly—through multiple payments and other things of value, gifts, and favors—in exchange for Watson agreeing to influence the award of USAID contracts valued at hundreds of millions of dollars to **VISTANT** and Apprio.

11. It was part of the conspiracy that **VISTANT** and Barnes obtained government contracts with USAID, including prime contracts through **VISTANT**, and at least one subcontract through Apprio.

12. The conspiracy involved at least fourteen USAID prime contracts, valued at approximately $552.5 million, that were awarded or solicited in exchange for bribes, including:

    a. between in and around 2013 and in and around 2015, the award of four contracts to Apprio valued at approximately $54.7 million; and

    b. between in and around 2018 and in and around 2022, the award of seven contracts to **VISTANT**, and bids on three additional contracts by **VISTANT**, valued at approximately $497.8 million.

13. Throughout the conspiracy, **VISTANT**, Barnes, and their co-conspirators regularly paid various bribes to Watson including cash, iPhones, laptops, thousands of dollars in tickets to a suite at an NBA game, a country club wedding, downpayments on two residential mortgages, cashier checks to pay off debt, which included a vacation at Martha's Vineyard, as well as intangible benefits like jobs for relatives. Ultimately, **VISTANT**, Barnes, and their co-conspirators paid Watson numerous bribes collectively valued at more than $1 million.

## Overt Acts

14. In furtherance of the conspiracy, and to effect the object of the conspiracy, the

following overt acts, among others, were committed in the District of Maryland and elsewhere:

a. On or about July 31, 2018, shortly before USAID awarded Barnes and **VISTANT** its first prime contract, Watson discussed with Young how he would approach Barnes to ask for payments. Watson texted Young, "I[']m starting money talk with [Barnes] just to test the water[.]" Young replied, "Do your thing my brother[.]" Watson later texted Young, "I[']m sure you appreciate the PRE work that goes into all of this—and it[']s work[.] Just to get people [in] the program office to see things my way[.]"

b. On or about May 6, 2021, Barnes made the first of several payments, $2,500, for a country club wedding for Watson, which cost over $30,000.

c. On or about July 1, 2021, Barnes, through **VISTANT**, wired $34,500 to Company 1, which submitted a sham company invoice to Barnes to conceal the payment, $30,000 of which Young transferred that week to Watson in four separate payments, two of which falsely listed Watson on payroll for Company 1.

d. On or about March 8, 2022, Young transferred $6,500 to Watson, which was the same amount of money that Barnes transferred to Young on or about that same day.

e. In or around August 2022, Watson provided Barnes with a technical evaluation package containing confidential source-selection information as to the status of proposals **VISTANT**'s competitors submitted for the award of a contract with a value of approximately $143 million. The package included USAID's assessment of the strengths and weaknesses of bids, which indicated that **VISTANT** was not the top candidate.

f. During the same month and next month, Barnes withdrew funds from a **VISTANT** account to buy cashier's checks totaling more than $50,000, which were used to pay debts of Watson.

4

g.   In or around October 2022, as a bid that **VISTANT** submitted on a $143 million USAID contract was being evaluated, Barnes paid Watson approximately $60,000 in two transfers from Young, which **WATSON** subsequently used to close on a new home.

h.   On or about January 18, 2023, around which time the scheme came to USAID's attention but was not fully revealed, Watson texted Barnes, "Was told today that we are back at business as usual. That there are no findings. … From me to you. We can't get lax ever again. Gotta stay tight. This coulda [sic] gone way worse. I gotta admit to you that I was way pissed at how all of this happened as I am sure you can understand." Barnes replied, "Yes but understand and I feel horrible and sorry about it all."

18 U.S.C. § 371.

## COUNT TWO
### (Securities Fraud)

15. Paragraphs 1 through 6 and Paragraphs 9 through 14 of this Information are alleged and incorporated by reference as if set out in full.

16. From at least in or around March 1, 2022 through at least in or around March 31, 2022, in the District of Maryland, and elsewhere, the defendant,

**PM CONSULTING GROUP LLC D/B/A VISTANT,**

did knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and facilities of national securities exchanges, in connection with the purchase and sale of securities, use and employ, and cause others to use and employ, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by making, and causing others to make, untrue statements of material fact and omitting to state, and causing others to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to wit, materially misrepresenting to Company 2 that **VISTANT** was in compliance with all laws when, in fact, **VISTANT** had been engaging a bribery scheme to obtain USAID contracts.

15 U.S.C. §§ 78j(b) and 78ff
17 C.F.R. § 240.10b-5

## FORFEITURE ALLEGATION

The United States of America further alleges that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) in the event of the defendant's conviction under Count One and County Two of this Information.

2. Upon conviction of the offense alleged in Count One or Count Two of this Information, the defendant,

**PM CONSULTING GROUP LLC D/B/A/ VISTANT,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: 6/11/25

/s/ Lorinda Laryea
Lorinda I. Laryea
Acting Chief
United States Department of Justice
Criminal Division, Fraud Section

Date: 6/11/25

Kelly O. Hayes  /PDK
Kelly O. Hayes
United States Attorney